Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
DIVERSITY LAW GROUP, P.C.
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class
*** ADDITIONAL COUNSEL ON NEXT PAGE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMNANG TOUCH, as an individual and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>COX AUTOMOTIVE CORP SVCS., LLC, a limited liability company; COX AUTOMOTIVE MOBILITY SOLUTIONS, INC., a corporation; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No. 2:23-cv-01945-TLN-CSK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      May 1, 2025<br>Time:     2:00 p.m.<br>Courtroom: 2, 15th Floor<br>Judge:   Hon. Troy L. Nunley |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

## ADDITIONAL COUNSEL FOR PLAINTIFF

William L. Marder (SBN 170131)
bill@polarislawgroup.com
**POLARIS LAW GROUP**
501 San Benito Street, Suite 200
Hollister, CA 95023
Telephone: (831) 531-4214
Facsimile: (831) 634-0333

Edward W. Choi, Esq. SBN 211334
edward.choi@choiandassociates.com
**LAW OFFICES OF CHOI & ASSOCIATES**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Telephone: (213) 381-1515
Facsimile: (213) 465-4885
Email: edward.choi@choiandassociates.com

Dennis S. Hyun (State Bar No. 224240)
**HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
Los Angeles, CA  90071
(213) 488-6555
(213) 488-6554 facsimile
dhyun@hyunlegal.com

Attorneys for Plaintiff and the Class

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 1, 2025, at 1:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 of the United States District Court for the Eastern District of California, located at Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, before the Honorable Troy L. Nunley, Plaintiff Samnang Touch ("Plaintiff") will and hereby does move the Court for an Order (1) granting final approval of the proposed class action settlement; (2) approving Class Counsel's application for attorneys' fees in the amount of $50,000.00 (approximately one-third of the Gross Fund Value) and reimbursement of costs in the amount of $19,418.34; and (3) approving Plaintiff's request for an enhancement award of $5,000.00.

Given that this is a Motion for Final Approval of a settlement reached with Defendants Cox Automotive Corporate Services, LLC and Cox Automotive Mobility Solutions, Inc. ("Defendants"), Plaintiff has been informed that Defendants will not oppose this Motion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Edward W. Choi, Dennis S. Hyun, William L. Marder, Edward W. Choi, Dennis S. Hyun, Plaintiff Samnang Touch, and Jonathan Paul of Xpand Legal, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.


DATED: March 27, 2025          LAW OFFICES OF CHOI & ASSOCIATES, APLC


By: _____/s/ Edward W. Choi_____
Edward W. Choi
Attorneys for Plaintiff and the Class

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

I.    INTRODUCTION ...................................................................1

II.   LITIGATION HISTORY .......................................................2

   A.   Plaintiff's Claims ............................................................2

   B.   Defendants Vigorously Denies Plaintiff's Allegations.................2

   C.   Procedural History .........................................................2

III.  SUMMARY OF THE PROPOSED SETTLEMENT .......................3

   A.   The Settlement Class .......................................................3

   B.   Scope of the Released Claims .............................................4

   C.   Monetary Relief Under the Settlement..................................4

   D.   Service Payment to Plaintiff .............................................5

   E.   Attorney's Fees and Costs.................................................5

   F.   Settlement Administration Costs .......................................6

IV.   FINAL CLASS CERTIFICATION OF THE CLASS IS APPROPRIATE 6

V.    CLASS MEMBERS WERE PROVIDED PROPER NOTICE OF THE

SETTLEMENT .........................................................................6

VI.   THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL

APPROVAL ............................................................................7

   A.   The Strength of Plaintiff's Case Supports Settlement ...............8

   B.   Risks, Expense, and Duration of Continued Litigation Supports

Settlement ...............................................................................9

   C.   The Settlement Amount Favors Settlement ..........................9

   D.   The Extent of Discovery Favors Settlement..........................10

   E.   The Recommendations of Counsel Favor Approval of the Settlement ..11

   F.   The Class Has Responded Favorably to the Proposed Settlement .........11

   G.   The Procedure Through Which the Settlement Was Achieved Supports

Final Approval ........................................................................12

**VII. THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED** .......................................................................................**14**

  **A.  Attorneys' Fees in Common Fund Cases** ...................................**14**

      **1.    The Court Should Award Fees Based on the Percentage of the Recovery**        14

      **2.    Class Counsel Satisfies the Criteria for a Common Fund Award** 18

  **B.  The Lodestar Calculation "Cross-Check"** ...............................**19**

  **C.  The Court Should Approve the Request for Reimbursement of Costs** ..**22**

**VIII. PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED** .............**22**

**IX. THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED** .............**23**

**X.  CONCLUSION** .......................................................................**24**

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**Statutes**

Labor Code § 226 ................................................................................2

Labor Code § 226(a) ...........................................................................2

Labor Code § 226(a)(2) .......................................................................3

Labor Code § 226(a)(8) .......................................................................3

Labor Code § 226(e) ......................................................................2, 22

Labor Code § 2698, *et. seq* ...............................................................2

**Other authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2002) ...........................................................................................9

4 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002) .................13

4 NEWBERG ON CLASS ACTIONS, at §11.45 ............................................9

Federal Rules of Civil Procedure 23(a) ..................................................6

Federal Rules of Civil Procedure 23(e) ..................................................7

*Manual for Complex Litigation* (Fourth) § 21.6 (2004) .........................12

*Manual For Complex Litigation* (Fourth) § 30.42) ................................13

Newberg on Class Actions, Fourth Edition, vol. 4, p. 556, §14.6 ..............15

**Cases**

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980) ...................11

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) ..19

*Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) ..............................................................................................10

*Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) ..............................................................................................19

*Birch v. Office Depot, Inc.,* No. 06CV1690 DMS (WMC), slip opin. (S.D. Cal. Sept. 28, 2007) .....................................................................................19

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE
ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ....................................15

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) .................................... 14, 15

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)............................11

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) .............23

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ........15

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885) ..........................15

*Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at
    *10 (C.D. Cal. Oct. 11, 2016)................................................................16

*Chavez v. Petrissans*, Case No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D. Cal.
    Dec. 15, 2009) .......................................................................................19

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010)...8,
    10, 11, 12

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) ...................12

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) .............................8

*Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2014 WL 212587, at *3 (N.D.
    Cal. Jan. 17, 2014) ................................................................................19

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22,
    2014) ....................................................................... 8, 9, 10, 11, 12

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) .................11

*Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 113CV00474DADBAM,
    2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) ...........................................17

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236
    (9th Cir. 2001) .......................................................................................16

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)...........................................15

*Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL
    5364575 (E.D. Cal. Oct. 31, 2012)..............................................................19

*Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26,
    2007) ................................................................................... 14, 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ........................8, 13

*In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) .................15

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) ..........................................................................................................23

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ....................11

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000)......................9

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ........11

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015)...18

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) .......................15

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)...................19

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F. Supp. 2d 721 (D.N.J. 2000). .........................................................................................................20

*Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881)............15

*Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000) ............................................8

*Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *5-9 (C.D. Cal. June 28, 2013)...................................................................................19

*Ketchum vs. Moses*, 24 Cal.4th 1122, 1133 (2001) .................................................21

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ...............................11

*Laffitte v. Robert Half Int'l., Inc.* (2014) 231 Cal.App.4th 860, 871.......................17

*Lao v. H&M Hennes & Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166) ........................................................................................................................17

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)..................13

*McKenzie v. Federal Express Corp.*, 2012 US Dist Lexis 103666 (C.D. Cal. July 2, 2012) .......................................................................................................................10

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)...................................................14

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) .........................................................................................................................9

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)....................20

*Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) .............................................................. 12, 13

*Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ............11

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) ...............................7

*Ramirez v. Walgreen*, N.D. Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) ..........17

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)................ 12, 13

*Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. 2007) ......................................................................................................................19

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939) ................................15

*Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ......................................22

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016) ......................................................................................................................15

*Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016) ......................................................................................................................20

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) .............................................................................................................................23

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) .19

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047 ...........................16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002) ...................18

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal.App.4th 440, 447 (2000) .........21

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) .............................................................................................................................14

*Zepeda v. Ulta Salon, Cosmetics & Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55) .........................................................................17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE
ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

# I.    INTRODUCTION

Plaintiff Samnang Touch ("Plaintiff") seeks final approval of the Stipulation of Class Settlement and Release (the "Agreement") between Plaintiff and Defendants Cox Automotive Corporate Services, LLC and Cox Automotive Mobility Solutions, Inc. ("Defendants") (Plaintiff and Defendants collectively, the "Parties"). Plaintiff also seeks an order approving Class Counsel's application for attorneys' fees in the amount of $50,000.00 (approximately one-third of the total settlement amount of $150,000.00 ("Gross Fund Value"), reimbursement of actual litigation costs in the amount of $19,418.34, and Plaintiff's application for an enhancement award of $5,000.00. This request was set forth in the Notice of Class Action Settlement ("Class Notice") mailed to all Class Members. As set forth in the Class Action Settlement Agreement and Release ("Agreement" or "Settlement") between the Parties, Defendants have agreed to not object to the requests sought herein.

On October 8, 2024, the Court entered an Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"). (Dkt. No. 22.) The Parties now seek this Court's final approval of the settlement. **Again, this settlement is non-reversionary, such that no monies will revert back to Defendants**. As such, there was no claims process involved. Class Members were given an opportunity to object or opt-out of the settlement. To date, there has been zero (0) opt out and zero (0) objections to the settlement. (Declaration of Jonathan Paul ("Paul Decl.") ¶¶ 7, 8.) Accordingly, this shows that the overwhelming majority of Class Members have reacted favorably to the settlement as there is a **100 % participation rate and not a single objection from the 150-member class**. Moreover, all of the Court's orders concerning dissemination of the Class Notice have been followed. Based thereon, Plaintiff respectfully requests that final approval be granted in its entirety.

///

## II.    LITIGATION HISTORY

### A.    Plaintiff's Claims

Plaintiff was hired by Dickinson Fleet Services on or about April 25, 2022. (Declaration of Samnang Touch ("Touch Decl.") ¶ 2).  Plaintiff worked as a Mobile Diesel Technician.  (*Id.*)  Plaintiffs' employment ended in or around January 2024.  (*Id.*)  Plaintiff contends that Defendants failed to provide wage statements that included the accurate total hours worked and failed to provide wage statements that identified the legal employer.  (*Id.* ¶ 3).

### B.    Defendants Vigorously Denies Plaintiff's Allegations

Defendants vigorously deny Plaintiff's allegations in their entirety, contend that they complied with the law, and have asserted numerous affirmative defenses. Specifically, Defendants contend that Plaintiff would be unable to establish a class-wide injury and/or a "knowing and intentional" violation of Labor Code § 226(a), as required by § 226(e). Defendants further maintain that they acted in good faith and should not be subject to penalties for a violation that was not knowing, intentional, or willful.

### C.    Procedural History

On May 19, 2023, Plaintiff filed his Complaint for violation of California Labor Code §226 in the San Joaquin Superior Court. (Declaration of Edward Choi ("Choi Decl.") ¶ 3).  On August 2, 2023, Plaintiff filed a Representative Complaint adding a cause of action for California Labor Code §2698, *et. seq.* (*Id.* at ¶ 4).  On September 8, 2023, the San Joaquin Superior Court granted Defendant's Motion to Consolidate the two separate lawsuits that were filed by Plaintiff. (*Id.* at ¶ 5). Defendant subsequently removed the action to the United States District Court for the Eastern District of California and is currently assigned Case No. 2:23-cv-01945-TLN-CSK.  (*Id.* at ¶ 6).

Plaintiff's lawsuit for violation of Labor Code §226 is premised on two separate and distinct claims – (1) for failure to identify the accurate total hours

worked in violation of Labor Code §226(a)(2) and (2) for failure to identify the accurate name of the legal entity of the employer in violation of Labor Code §226(a)(8).

On March 12, 2024, the Parties participated in private mediation with Steve Rottman (Choi Decl. ¶ 7.) Following the conclusion of the mediation, the Parties were able to reach a class-wide settlement of the total hours worked claim, but the name of the employer claim is still pending.  (*Id.*)  Defendants' motion for summary judgment and Plaintiff's motion for class certification on the Labor Code § 226(a)(8) claim are scheduled to be heard at the same date/time as this Motion for Final Approval.  (*Id.*)

On October 8, 2024, this Court granted preliminary approval of the Settlement. (Dkt. No. 22.)

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms of the settlement are set forth in the Settlement Agreement and the Order Granting Preliminary Approval of Class Action and PAGA Settlement. (Dkt. Nos. 18-2, and 22.) The principal terms are set forth below.

### A.    The Settlement Class

The Settlement Class is comprised of "Current and former California non-exempt employees of Cox Automotive Corporate Services, LLC who, after May 19, 2022, received wage statements showing a 'total hours' figure that did not match the hours worked in the pay period."  (Dkt. No. 18-2, at ¶ 3.) The Settlement Class includes all Class Members, as not a single Class Member submitted valid and timely requests for exclusion." (Paul Decl. ¶ 7.)  Thus, there are 150 Settlement Class Members. (*Id*. ¶¶ 4, 7.)

///

**B.      Scope of the Released Claims**

The Settlement Class is releasing:

> Each member of the Settlement Class, regardless of
> whether that member submitted a timely claim, releases
> Cox and the Releasees from any and all claims, debts,
> liabilities, demands, obligations, guarantees, costs,
> expenses, attorney's fees, damages, action or causes of
> action contingent or accrued for, which would reasonably
> arise from the allegation that Cox violated Labor Code
> Section 226(a)(2) as to the 444 wage statements Cox has
> identified where the total hours figure was greater than
> the hours worked in the pay period. It will not impact the
> viability of claims that Cox failed to list an accurate
> employer name on wage statements, except with respect
> to the specific 444 wage statements on which Cox is
> making payments under this settlement agreement. The
> effective date of the release will run from on May 19,
> 2022, through July 7, 2023, the date that Cox
> implemented the fix on its wage statements with respect
> to the total hours worked. Plaintiff also agrees that he
> will be barred from further pursuing the theory under
> Labor Code § 226(a)(2) that Cox provided wage
> statements that inaccurately listed hours worked to him
> and the remaining 150 individuals receiving settlement
> payments within this lawsuit.

(Dkt. No. 18-2, at ¶ 21.)

**C.      Monetary Relief Under the Settlement**

Defendants will pay a total Gross Fund Value of $150,000.00. The sum available for use as payments to Settlement Class Members after the settlement administration costs, awards of attorneys' fees and costs, class representative service award, and PAGA penalties paid to the LWDA shall be referred to as the Net Settlement Amount. (Dkt. No. 18-2, at ¶ 11(e).) The Net Settlement Amount is approximately $49,081.66. (Paul Decl. ¶ 15.) Defendants agrees that it shall pay the entirety (100%) of the Net Settlement Amount. **In other words, the settlement**

4

**is non-reversionary, meaning that no funds will revert back to Defendants**. (Dkt. No. 18-2, ¶ 13(c).)

No claim forms were necessary for any Class Member to participate in the settlement and receive their share of the settlement. Thus, any Class Member who did not opt-out in connection with this settlement will automatically receive his/her share of the settlement proceeds. On average, each Settlement Class Member will receive a payment of approximately $327.21. (Paul Decl. ¶ 15.) The highest individual settlement payment to be paid will be approximately $1,547.62. (*Id.*) Any remaining monies from uncashed checks will be paid to the the California State Controller's Office in the name of the Qualified Claimant. (Dkt. No. 18-2 at ¶ 13(c).)

**D.    Service Payment to Plaintiff**

Plaintiff applies for a Class Representative Service Award in the amount of $5,000.00. (Dkt. No. 18-2, ¶ 11(b)).  This amount is to compensate Plaintiff for prosecuting this case, including meeting and communicating with his counsel, preparing and sitting for Plaintiff's deposition, reviewing the pleadings and documents in this case. (Touch Decl. ¶¶ 4-6.) The propriety of the requested enhancement payment discussed in greater detail below. Class Members have been apprised of Plaintiff's request for a Class Representative Enhancement Payment, as well as their ability to obtain a copy of the Settlement Agreement, and to object to said request if they so desire. (Paul Decl. ¶ 4, Ex. B.) Not a single Class Member objected to the requested enhancement payment. (*Id.* ¶ 8.)

**E.    Attorney's Fees and Costs**

Similarly, Class Counsel applies for an award of attorneys' fees in the amount of approximately one-third of the Gross Fund Value or $50,000.00, as well as declared litigation costs in the amount of $19,418.34 in connection with the prosecution of this Class Action. The propriety of the sought fees and costs are discussed in greater detail below. Class Members have been apprised of Class

5

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Counsel's request for attorney's fees, as well as their ability to obtain a copy of the Settlement Agreement, and to object to said request if they so desire. (Paul Decl. ¶ 4, Ex. B.) Not a single Class Member objected to the requested attorneys' fees and costs. (*Id.* ¶ 8.)

### F.    Settlement Administration Costs

The Court preliminarily approved Xpand to serve as the Settlement Administrator. Plaintiff seeks approval of the Settlement Administrator's fees in the amount of $6,500.00. (Paul Decl. ¶ 14.) The administration costs will be deducted from the Gross Fund Value. (Dkt. No. 18-2, at ¶ 11(c).)

## IV.    FINAL CLASS CERTIFICATION OF THE CLASS IS APPROPRIATE

To be certified, a settlement class must meet the following criteria: (1) the individuals in the settlement class are so numerous that joinder would be impractical; (2) there is a commonality of interest between the plaintiff and the members of the settlement class; (3) plaintiff's claims are typical of the claims of the settlement class members; and (4) plaintiff and their counsel will fully and adequately represent the interests of the settlement class members. Fed. R. Civ. P. 23(a); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). In preliminarily approving the proposed Settlement, the Court found each of these criteria to be satisfied. Preliminary Approval Order (Dkt. No. 24.) Insofar, as nothing has changed with respect to the Class definition or its suitability for certification, the Court should grant final class certification of the class.

## V.    CLASS MEMBERS WERE PROVIDED PROPER NOTICE OF THE SETTLEMENT

The notice procedures required by the Preliminary Approval Order, have been followed and satisfy all due process rights of Class Members. The Preliminary Approval Order contemplated that the Class Notice, as approved in the Preliminary Approval Order, be sent to all Class Members by first class mail, as

6

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

specified in the Settlement Agreement. Further, the Preliminary Approval Order contemplated, that Xpand would serve as the Settlement Administrator.

As clearly stated in the Jonathan Paul Declaration, notice was provided to Class Members, as required by the Preliminary Approval Order. On October 15, 2024, the Settlement Administrator received a Class Member data file from Defendants' counsel that included 150 Class Members. (Paul Decl. ¶ 4.) On October 29, 2024, each of the persons identified in the data file were sent the Class Notice via first class mail. (*Id*. ¶ 4.) From the date of mailing, zero (0) notices were returned with an invalid address. (*Id*. ¶ 4.) Of these, 3 were mailed to updated addresses after performing a skip-trace. (*Id*.) As of the date of this filing, two (2) Class Notice remains undeliverable. (*Id*.) Further, the Class Notice provided Class Members with Class Counsel's contact information, where they could further seek information regarding the class settlement, leave questions for the Settlement Administrator, and update their address. (*Id*. ¶ 4, Ex. B.)

The provision of sending the notice to class members as described above meets the requirements for the "best notice practicable" in this case as necessary to protect the due process rights of class members. *See*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best notice practicable" with description of the litigation and explanation of opt-out rights satisfies due process). Class Members were provided with a mailing regarding the settlement that explained the settlement and allowed Class Members to seek information, ask questions, and object, if so desired. As such, proper notice has been given to the Class Members.

## VI.    THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that any compromise of a class action must receive Court approval. The court has broad discretion to grant such approval and should do so where the proposed settlement

7

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The fairness, reasonableness, and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel;…and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026. Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A.    The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when the plaintiff must overcome barriers to make his case. *Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 851 (N.D. Cal. 2010). First, Plaintiff would have been required to prevail on a class certification motion, which is never a guarantee. Second, even assuming class certification could be achieved, Plaintiff would have been required to establish that the violations did in fact exist. Defendants dispute any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff. Moreover, Defendants asserted numerous defenses aimed at circumscribing both the Class's claims and the penalties available to it. *See* § II-B, *supra*. Therefore, this factor favors settlement. *See Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in

establishing their claims"); *see also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

**B.    Risks, Expense, and Duration of Continued Litigation Supports Settlement**

"Difficulties and risks in litigating weigh in favor of approving a class settlement." *Dyer*, 2014 WL 5369395, at *3 (citation omitted). In addition to the obstacles set forth above, even if Plaintiff had prevailed at trial, there was a likelihood that Defendants would have appealed the verdict. Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See id.* at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation"). Again, Plaintiff faced significant risk in this case based on Defendants' contention that its wage statements complied with the law.

**C.    The Settlement Amount Favors Settlement**

The standard of review for class settlements is whether the Settlement is within a range of reasonableness. As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.45 (4th ed. 2002).

Numerous courts have held that **gross** settlements approximating between only 8 and 25% of the defendant's potential exposure are fair and reasonable. *See, e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding that class action settlement recovering 16% of potential exposure was fair and reasonable; "[i]t is well-settled law that a cash settlement amounting to only a

fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment"); *Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement recovering between 8.5% and 25% of the defendant's potential exposure was fair).

As already stated above, Defendants contend that it has complied with the law. Nevertheless, an "apples to apples" comparison with a similar case shows that the Settlement is reasonable. In the present case, the gross settlement of $150,000 is for approximately 444 wage statements. This amounts to approximately $337.84 per wage statement at issue. The settlement in *McKenzie v. Federal Express Corp.*, 2012 US Dist Lexis 103666 (C.D. Cal. July 2, 2012), which involved a gross settlement amount of $8,250,000 for 484,928 wage statements which amounted to approximately $17.00 per wage statement. Not only did the *McKenzie* case involve the same exaction violations as alleged in the current case, the District Court found that the *McKenzie* settlement to be fair, reasonable and adequate. *Id.* at *6. The current settlement amount is almost 20 times per wage statement that was approved in *McKenzie*. Thus, the logical conclusion is that the current settlement is indeed, fair, reasonable and adequate.

### D.    The Extent of Discovery Favors Settlement

Here, settlement was reached following the exchange of significant meet and confer processes and production and review of substantial amounts of data and documents. The negotiations at all times were adversarial and non-collusive, including a full day before a third-party mediator. Moreover, Class Counsel had the information necessary to ascertain the value of the class claim. Courts have held that such discovery is sufficient for parties to make an informed decision regarding the adequacy of the settlement. *See*, *e.g.*, *Dyer*, 2014 WL 5369395, at *3; *Chun-Hoon*, 716 F.Supp.2d at 848 ("true value of the class claims is well-known

and class counsel possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have sufficient information to make an informed decision about settlement).

### E.    The Recommendations of Counsel Favor Approval of the Settlement

The recommendations of experienced counsel should be given considerable weight. *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F.Supp. 446, 451 (N.D. Cal. 1988).

Class Counsel has broad experience litigating employment class actions. (Choi Decl. ¶14; Declaration of Larry W. Lee ("Lee Decl.") ¶¶ 6-8; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶ 3-6; Declaration of William L. Marder ("Marder Decl.") ¶¶ 2-10.) They support this settlement as a fair and reasonable settlement which is in the best interest of the Settlement Class. (Choi Decl. ¶¶11-12; Lee Decl. ¶3; Hyun Decl. ¶ 7; Marder Decl. ¶¶ 2-7.) Therefore, this factor favors approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-Hoon*, 716 F.Supp.2d at 848 (same).

### F.    The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, zero individuals have objected and/or opted out, and there are no disputes. (Paul Decl. ¶¶ 6-8.) In other words, this settlement has a 0% objection and a 100% participation rate. (*Id.*) Thus, the lack of objections and opt-outs strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun-Hoon*, 716 F.Supp.2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### G. The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case. *Officers for Justice v. Civil Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982). Therefore, although not one of the *Officers for Justice* listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement. *See Chun-Hoon*, 716 F.Supp.2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at"), citing *Manual for Complex Litigation, Fourth* § 21.6 (Fed. Jud. Ctr., 4th ed. 2004). As noted above, the Parties participated in an arm's length negotiation, facilitated by a professional mediator with significant class action experience. This weighs in favor of approval of the settlement. *See Chun-Hoon*, 716 F.Supp.2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." 563 F.3d 948, 965 (9th

Cir. 2009), citing *Hanlon*, 150 F.3d at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The Court in *Rodriguez* found that the settling parties "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted). As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted); *see also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation, Fourth* § 30.42).

The proposed settlement has no deficiencies. There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625  (citation omitted). In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently

13

came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendants' contention that it would prevail on the merits.

## VII.  THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

### A.  Attorneys' Fees in Common Fund Cases

#### 1.  The Court Should Award Fees Based on the Percentage of the Recovery

Governing Ninth Circuit law, following the clear instruction of the United States Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), establishes that percentage awards are to measure against the entire common fund created in the settlement. In *Glass v. UBS Financial Services, Inc.*, 2007 WL 474936, at *16 (N.D. Cal. Jan 26, 2007), citing to the Ninth Circuit authority, the Court noted:

> The Ninth Circuit has held, however, that the district court must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class.

*See also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir.1997).

Moreover, the U.S. Supreme Court consistently has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*, 444 U.S. at 478; *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970). The purpose of this doctrine is largely to avoid unjust enrichment, by spreading the litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone. It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund.

Every United States Supreme Court case that has considered the award of

attorney's fees under the common fund doctrine has determined those fees as a percentage of the recovery. *See, e.g.*, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)) (noting that the percentage of recovery method is the appropriate method to award attorney's fees in common fund cases); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165 n.2 (1939); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 128 (1885); *Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1881).

The Ninth Circuit has also recognized a "ground swell of support for mandating a percentage-of-the-fund approach in common fund cases." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee of 33% of the recovery). Although the Ninth Circuit has typically found that 25% of the common fund is "benchmark," numerous courts in the Ninth Circuit have awarded higher amounts. *See Stetson v. West Publishing Corp.*, Case No. 13-57061, at *11 (9th Cir. May 11, 2016). The twenty-five percent benchmark may be adjusted upward or downward depending on the circumstances presented by the particular case. Indeed, the Ninth Circuit and district courts therein have routinely permitted recovery in the amount of 33.33%, 40%, and even up to 50% of the common fund. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989) (listing Ninth Circuit cases).

Seeking a fee based on a percentage of the gross recovery, which is what Class Counsel is seeking here, is appropriate and even desirable in cases like this. *See* Newberg on Class Actions § 14.6 (4th ed. 2002) (noting that percentage of the fund awards are preferable because they align the interests of the attorney with the client, as the attorney is not incentivized to bill unnecessary hours to generate a greater fee); *Boeing Co.*, 444 U.S. at 478. Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee,

under the POR [percentage of recovery] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fees the lawyer earns. Thus, one of the primary advantages of the POR method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

As this case was removed to this Court pursuant to diversity jurisdiction, Plaintiff respectfully submits that California law should govern this Court's analysis.[1] The California Supreme Court clarified its stance on common fund cases, ruling –

> "We join the overwhelming majority of federal and state courts in holding that when class action litigation established a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."

*Laffitte v. Robert Half Int'l*, 1 Cal.5th 480, 503 (2016). Explaining its ruling, the Court further held that "[t]he recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging litigation—convince us the percentage method is a valuable tool that should not be denied by our trial courts." *Id.* (internal citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047.

---

[1] Courts are obligated to apply California law in diversity jurisdiction cases in awarding attorneys' fees. *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001) ("Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees."); *Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *10 (C.D. Cal. Oct. 11, 2016) ("**[i]n diversity actions…, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees**") (emphasis added).

1    Based on this rationale, the California Supreme Court in *Laffite* affirmed a

2    fee award representing one-third of the fund and rejected the objections of

3    putative class members to this award. *Laffitte*, 1 Cal.5th at 506. Further, this was

4    based on a lodestar amount that required a multiplier of 2.13. *Id*. at 487. As the

5    Court held, only when the multiplier is "extraordinarily high or low [should] the

6    trial court [] consider whether the percentage method should be adjusted so as to

7    bring the imputed multiplier within a justifiable range." *Id*. at 505. Moreover, in

8    the *Laffite* intermediate court decision, the court observed that "33 1/3 percent of

9    the common fund is consistent with, and in the range of, awards in other class

10   action lawsuits." *Laffitte v. Robert Half Int'l., Inc*. (2014) 231 Cal.App.4th 860,

11   871.

12    Numerous district courts have followed *Laffite* in awarding 1/3 of the

13   common fund. Indeed, District Judge Edward Davila in *Ramirez v. Walgreen*, N.D.

14   Cal. Case No. 18-cv-03921-EJD (Dkt. No. 34) and *Lao v. H&M Hennes &*

15   *Mauritz*, N.D. Cal. Case No. 16-cv-00333-EJD (Dkt. No. 166), followed *Laffite* in

16   awarding class counsel (the same counsel as in the instant case) 1/3 of the common

17   fund of $1.15 million based on a multiplier of 1.32 and $3.8 million based on a

18   negative multiplier, respectively.

19    Further, the Eastern District Court in *Zepeda v. Ulta Salon, Cosmetics &*

20   *Fragrance, Inc.*, E.D. Cal. Case No. 1:17-cv-00853-DAD-EPG (Dkt. No. 55),

21   followed *Laffite*, in awarding 1/3 of the common fund of $3.4 million, or

22   $1,133,333.33 in attorneys' fees applying a multiplier of 1.328. (Dkt. No. 55 at 12-

23   14). In so holding, the Court reiterated that "[i]n a diversity action such as this,

24   federal courts apply state law both to determining the right to fees and the method

25   of calculating them." *Id.*; *see also Emmons v. Quest Diagnostics Clinical Labs.,*

26   *Inc*., No. 113CV00474DADBAM, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27,

27   2017) (following *Laffite* in awarding 33% of the common fund; "[t]he California

28   Supreme Court recently held that the percentage-of-fund method of calculating

attorneys' fees survives in California courts").

### 2. Class Counsel Satisfies the Criteria for a Common Fund Award

Courts consider the following factors in issuing an award under the common fund approach:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Vizcaino*, 290 F.3d at 1047-50).

Here, Class meets the factors for a common fund award pursuant to the factors above. It is undisputed that this case presented significant risk to Plaintiff, his counsel, and Class Members. Defendants asserted numerous defenses aimed at circumscribing both the Class's claims and the penalties available to it. *See* § II-B, *supra*. Notwithstanding these risks, Class Counsel still expended attorney time and costs in litigating this case, including engaging in extensive meet and confer discussions with defense counsel, obtaining and reviewing the data necessary for a damages analysis, and paying for a full day of mediation. Plaintiff accepted these burdens while knowing that the risk of losing was real. Indeed, Class Counsel's sole payment was based on contingency fee and no fixed guaranteed costs would have received unless Class Counsel were successful in this litigation. (Choi Decl. ¶17.)

Given the risk, the $150,000.00 settlement should be considered an exceptional result, providing a concrete monetary recovery for the class. The average estimated individual settlement payment to be paid being approximately $327.21, and the estimated highest individual settlement payment to be paid will be approximately $1,547.62. Paul Decl. ¶ 15.)

With respect to the market rate for similar cases, numerous courts have

18

awarded 1/3 of the common fund in class action settlements, such that the requested award in this case is well within the range of the marketplace. *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) ("The Settlement Agreement's provision of $430,000 in attorneys' fees (33 percent of the total settlement amount), is fair and reasonable in light of the awards of attorneys' fees in similar wage-and-hour cases in this district"); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (court approving attorneys' fees in the amount of 33 percent of the common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492-93 (E.D. Cal. 2010) (33 1/3% awarded); *Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees); *Chavez v. Petrissans*, Case No. 1:08-cv-00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. 2007) (33 1/3% awarded).[2] In sum, Plaintiff and his counsel respectfully request that the Court award 1/3 of the common fund pursuant to *Laffitte* and all of the authority cited above.

### B.    The Lodestar Calculation "Cross-Check"

It has been noted that it is sometimes helpful to courts to "cross-check" a percentage award by employing a lodestar with a multiplier analysis. While the

---

[2] *See also Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *5-9 (C.D. Cal. June 28, 2013) (granted attorneys' fees and costs of $993,000 in class settlement involving recall of vehicles, without any immediate financial payout to the class); *Cordy v. USS-Posco Indus.*, No. 12-CV-00553-JST, 2014 WL 212587, at *3 (N.D. Cal. Jan. 17, 2014) ("a proposed attorney's fee award of not more than 33% appears to be reasonable"); *Birch v. Office Depot, Inc.,* No. 06CV1690 DMS (WMC), slip opin. (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million break claim wage and hour class action).

19

lodestar method is generally considered inappropriate in a common fund case where real cash benefits (as opposed to coupons or non-monetary benefits) are made available to class members, its use can provide further validation of the appropriateness of the percentage award approach. *See In re Prudential Ins. Co. of America Sales Practice Litigation*, 106 F.Supp.2d 721 (D.N.J. 2000). Such is the case here.

The declarations of Class Counsel evidence the fact that they devoted approximately 287.10 hours of time to this litigation to date. (Choi Decl. ¶ 16, Ex. A; Lee Decl. ¶ 9, Ex. A; Hyun Decl. ¶ 8, Ex. A; Marder Decl. ¶ 18, Ex. A.) These hours are summarized in the time and task charts that are attached to Plaintiff's counsel's declarations. And, to the extent that any argument is made that the time spent was duplicative, the way in which Class Counsel work is for each attorney to handle a task and for the other attorneys to review and revise the work, which is identical to the way defense firms staff and handle cases. More importantly, as recently noted by the Ninth Circuit in *Stetson v. West Publishing Corp.*, Case No. 13-57061, at *13 (9th Cir. May 11, 2016), "some amount of duplicative work is 'inherent in the process of litigating over time.'" (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, Class Counsel expect to expend an additional 40 hours through the final approval hearing, including on matters such as preparing the Motion for Final Approval, attending the final approval hearing, and further conferring with class members regarding the case status. (Choi Decl. ¶ 16; Lee Decl. ¶ 10; Hyun Decl. ¶ 9; Marder Decl. ¶ 18.) Thus, Class Counsel will have expended 327.10 hours through final approval. Applying the various hourly rates of the lawyers who dedicated their efforts to this matter, a lodestar of $292,330.00 is established for the amount of work spent through final approval. (Choi Decl. ¶ 16, Ex. A; Lee Decl. ¶¶ 9-11, Ex. A; Hyun Decl. ¶¶ 8-10, Ex. A; Marder Decl. ¶ 18, Ex. A.) Thus, the fee application is supported whether by the cross-check lodestar method

discussed herein, or by the percentage of the common fund discussed in the preceding sections.

The hourly rates employed by Class Counsel, as declared to in the attorney declarations, are reasonable. Plaintiff's attorneys are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. The background and experience of Class Counsel are fully set forth in the declarations filed in support of this motion. The basic hourly rates listed for each firm are fair, and representative of the combination of years of experience and the clear successes they have had in the past in connection with class action litigation. The time and task charts summarize the total hours devoted to the matter by the various law firms, along with the hourly rates as set forth in the supporting declarations, and the total billed. (Choi Decl. ¶ 16, Ex. A; Lee Decl. ¶ 9, Ex. A; Hyun Decl. ¶¶ 8-10, Ex. A; Marder Decl. ¶ 18, Ex. A.)

As discussed in their supporting declarations, Class Counsel are a group of well-experienced litigators, including class action litigation. (Choi Decl. ¶ 14; Lee Decl. ¶¶ 4-8; Hyun Decl. ¶¶ 3-6; Marder Decl. ¶¶ 8-16.) Under California law, counsel are entitled to compensation for all hours reasonably spent on the matter. *Ketchum vs. Moses*, 24 Cal.4th 1122, 1133 (2001). Reasonableness of hours is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself…." *Vo v. Las Virgenes Municipal Water Dist*., 79 Cal.App.4th 440, 447 (2000). In addition, the attached time and task charts clearly reflect the many hours which were necessarily spent on the case.

In the Litigation History section above and in the accompanying attorney, the nature and extent of the proceedings held throughout this litigation were set forth in detail. Without repeating the same, it is incorporated herein. The total hours and billings thus generated are all supported herein. In sum, it is submitted that the reasonableness of Plaintiff's lodestar is manifest. In the present case, Class

21

Counsel's lodestar exceeds the requested amount and thus, heavily favors granting of one-third fees in this case. Thus, whether analyzed under the percentage of the fund approach, which is the dominant view, or via the cross-check approach under the loadstar approach, the fees are fully supported.

### C. The Court Should Approve the Request for Reimbursement of Costs

The request for reimbursement of costs, in the amount of $19,418.34 is fair and reasonable. The costs are all litigation related costs, which have been detailed in the supporting declaration of Class Counsel. (Lee Decl. ¶ 13, Ex. B; Hyun Decl. ¶ 11.) The authority for the Court to award costs is the Parties' Settlement Agreement and Labor Code § 226(e). Further, pursuant to the Settlement Agreement, Defendants have agreed not to oppose any request for reimbursement of costs up to $20,000.00.

## VIII. PLAINTIFF'S ENHANCEMENT SHOULD BE APPROVED

Finally, Plaintiff respectfully requests that the full amount of the service payment be awarded to her for the efforts that he undertook on behalf of the Class Members. It is commonly held that it is appropriate to recognize the role of the representative plaintiff without whose actions and courage the benefits of the settlement, which are conferred on the class as a whole, would never have been achieved. The criteria courts may consider in relation to incentive payments include: (1) the risk to the class representative in commencing the suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *See Stanton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)). Each of these factors favors the service awards requested in the present case.

Plaintiff is the only representative in this case. Plaintiff conferred with his

attorneys to provide information regarding the facts involved. (Touch Decl. ¶ 5.) Plaintiff also prepared and sat for his deposition. (*Id.*) Plaintiff has made himself available to answer questions and to sign declarations in support of the various pleadings and discovery in this case. (*Id.*) Plaintiff assumed these risks from which the whole Class benefitted. Class members did not have to file individual lawsuits, nor did they have to bear the risks of payment of fees and costs should they not prevail. Class members also do not have to face the risk of potential retaliation or risk of future employment, due to Plaintiff's efforts. In short, Plaintiff sacrificed a significant amount of time, effort, and her own rights in bringing about the benefits to the class.

The payment of enhancement awards to successful class representatives is appropriate and the amount of $5,000.00 to Plaintiff is within the typically accepted range. *See e.g. Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (incentive award of $50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 374 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000 Incentive award); *Glass v. UBS Fin. Servs*., No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 27, 2007) (awarding $25,000 Incentive award in FLSA overtime wages class action). Moreover, a $10,000.00 service payment represents only **0.5%** of the Gross Fund Value. For such reasons, Plaintiff respectfully requests that this Court find the enhancement payment amount of $5,000.00 to Plaintiff as fair, reasonable, and adequate and that the enhancement payment be awarded to Plaintiff.

## IX.    THE ADMINISTRATOR'S COSTS SHOULD BE APPROVED

Here, Xpand dutifully administered the settlement. (*See generally* Paul Decl.) The Agreement provides up to $6,500.00 for Xpand's costs. (Dkt. No. 18-2, at ¶ 11(c).) Plaintiff respectfully requests that the Court award Xpand its costs.

## X.    CONCLUSION

Based on the foregoing, Plaintiff and Class Counsel respectfully request that this Motion be granted in its entirety and grant Plaintiff's counsel's fee request of $50,000.00, costs requested in the amount of $19,418.34, class representative service award of $5,000.00, and settlement administration costs of $6,500.00. The Parties have reached this settlement following extensive litigation, ongoing case discussions, and arm's length negotiations. Plaintiff respectfully requests that the Court:

1.    Grant final approval of the proposed settlement;

2.    Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3.    Order payment from the settlement proceeds to Class Counsel and Plaintiff in compliance with the Settlement Agreement;

4.    Enter the proposed Final Approval Order and Judgment submitted herewith; and

5.    Retain continuing jurisdiction over the implementation, interpretation, and consummation of the settlement.


DATED: March 27, 2025        LAW OFFICES OF CHOI & ASSOCIATES, APLC


By:  _____/s/ Edward W. Choi_____
                    Edward W. Choi
            Attorneys for Plaintiff and the Class